IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:18-CV-42-D

ALFONZA J. HIGGS, as Administrator )
of the Estate of Alonza Higgs, )
                                          )
                 Plaintiff, )
                                          )
          v.                              )          **ORDER**
                                          )
BRIAN CENTER HEALTH & )
RETIREMENT/WINDSOR, INC., et al., )
                                          )
                Defendants. )

On July 12, 2018, Alfonza J. Higgs ("plaintiff"), on behalf of the estate of Alonza Higgs, filed a complaint in Bertie County Superior Court against Brian Center Health & Retirement/Windsor, Inc. ("Brian Center") and twenty-one other entities (collectively "defendants"), alleging negligence, medical malpractice, wrongful death, breach of contract, breach of third party beneficiary contract, and negligent misrepresentation [D.E. 1-1].[1] On August 24, 2018, the defendants jointly removed the action to this court [D.E. 1]. On October 26, 2018, plaintiff moved to remand the action to state court [D.E. 49] and filed a memorandum in support [D.E. 50]. On November 16, 2018, defendants SSC Windsor Brian Operating Company LLC ("SSC Windsor") and SavaSeniorCare Administrative Services LLC ("SSC Admin") responded in opposition [D.E. 59].

On August 27 and 28, 2018, sixteen defendants moved to dismiss the complaint [D.E. 14, 16, 18, 20, 22, 24, 26, 27, 30, 32, 34, 36, 38, 40, 42], and filed memoranda in support [D.E. 15, 17,

---

[1] On December 19, 2018, plaintiff voluntarily dismissed without prejudice the following defendants: SavaSeniorCare, Inc.; SavaSeniorCare Management, LLC; SSC Windsor Brian Management Company, LLC; and SVCARE Holdings, Inc. [D.E. 76].

19, 21, 23, 25, 28, 29, 31, 33, 35, 37, 39, 41]. On October 26, 2018, plaintiff responded in opposition [D.E. 51]. On November 16, 2018, several defendants replied [D.E. 60–62].

On August 31, 2018, SSC Windsor and SSC Admin answered plaintiff's complaint [D.E. 45, 46]. On November 12, 2018, plaintiff moved to strike both answers pursuant to Rule 12(f) of the Federal Rules of Civil Procedure [D.E. 55] and filed a memorandum in support [D.E. 56]. On December 3, 2018, SSC Windsor and SSC Admin responded in opposition [D.E. 69]. As explained below, the court denies plaintiff's motion to remand, grants the motions to dismiss, and denies the remaining motions.

I.

On July 14, 2015, Alonza Higgs ("Higgs") moved into Brian Center Health & Rehabilitation/Windsor in Windsor, North Carolina. See Compl. [D.E. 1-1] ¶ 73. At the time, Higgs was 73 years old and had been hospitalized from July 10, 2015, until July 14, 2015. See id. ¶¶ 3, 79. While in the hospital, Higgs had received treatment for numerous ailments, including a urinary tract infection, renal failure, hypertension, and generalized weakness. Id. ¶ 79. Higgs, however, did not have any pressure injuries at that time. See id. ¶¶ 87–90. When the staff admitted Higgs to the nursing home, the staff anticipated that he would be discharged after completing short-term rehabilitation. See id. ¶¶ 84, 139.

When he entered the nursing home, Higgs's general physical condition was poor. On July 15, 2015, Regina Bond ("Bond"), an occupational therapist, noted that Higgs had "muscle weakness, strength impairments, fine motor control deficits, decreased coordination, and limb pain." Id. ¶ 147. He was unable to sit or stand and was "totally dependent" on others for necessary activities, including bathing, using the toilet, and dressing. Id. ¶¶ 148–150. Bond also noted that Higgs required "maximum assistance for bed mobility" and was at risk of developing pressure injuries and

2

sores. Id. ¶¶ 151, 156–57.

Plaintiff alleges that the nursing home staff failed to provide competent care to Higgs. See id. ¶¶ 92–117. Although the staff wrote an interim plan of care when the staff admitted Higgs, the plan did not indicate that Higgs was at risk for developing pressure injuries and did not include any instruction to reposition Higgs frequently to decrease pressure. See id. ¶¶ 119–23. As a result, plaintiff alleges that the nursing home staff failed to implement a care plan to prevent Higgs from developing pressure injuries, like repositioning Higgs regularly or placing Higgs on a custom mattress that would decrease the risk of such injuries. See id. ¶¶ 125–33, 157–58. Additionally, plaintiff alleges that the nursing home staff failed to manage Higgs's nutrition properly to minimize the risk of pressure injuries. See id. ¶¶ 134–35, 163–65.

On July 22, 2015, the nursing home staff observed "two large blisterous type pressure ulcers" on Higgs's buttocks. Id. ¶¶ 174–75. Although one of "[d]efendants' licensed practical nurses" provided limited initial treatment, the nursing home staff failed to timely notify Higgs's doctors or his family of the ulcers. See id. ¶¶ 176–79, 181. Plaintiff also alleges that defendants failed to implement additional measures, such as nutritional changes or a speciality mattress, to help heal Higgs's wounds and prevent them from worsening. See id. ¶¶ 183–86. On July 25, 2015, the nursing home staff prepared and implemented a plan to address Higgs's pressure injuries. See id. ¶¶ 190–94.

Despite this plan, Higgs's condition worsened over the following weeks. See id. ¶¶ 199–262. On August 16, 2015, Higgs was "not acting like himself" and at some point became unresponsive. Id. ¶¶ 263, 266. On August 17, 2015, the nursing home transferred Higgs to Vidant Bertie Hospital ("Vidant") in Windsor, North Carolina. Id. ¶ 268. When Higgs arrived, plaintiff alleges that hospital staff noted a foul odor coming from Higgs's pressure wounds, and Higgs suffered extreme sensitivity

3

to movement and pain. Id. ¶¶ 272–73. Higgs was "in critical condition," and the hospital admitted Higgs to the Medical Intensive Care Unit. Id. ¶ 284. The hospital staff determined that Higgs had a "Stage IV decubitus ulcer." Id. ¶¶ 285, 294. Higgs also displayed signs of either septic shock or bacterial sepsis. See id. ¶¶ 288–93, 295–97. Doctors operated on Higgs's ulcer that day. Id. ¶ 306. On September 3, 2015, Vidant transferred Higgs to LifeCare Hospital of North Carolina ("LifeCare") for "wound management." Id. ¶¶ 311–12.

While at LifeCare, Higgs's condition continued to deteriorate. See id. ¶¶ 316–22. On October 7, 2015, Higgs went into cardiac arrest. Id. ¶ 323. After being resuscitated, Higgs was transferred from LifeCare to Vidant, and Higgs was hospitalized. See id. ¶¶ 324–25. More pressure ulcers developed on different parts of Higgs's body. See id. ¶¶ 327–31. On October 20, 2015, Higgs was discharged from Vidant and transferred to LifeCare for continued wound care. Id. ¶¶ 332–33. "After completing care at LifeCare," Higgs was transferred to PruittHealth in Farmville, North Carolina. Id. ¶ 334. On April 8, 2017, Higgs died. Id. ¶ 335. Plaintiff alleges that the original pressure injuries proximately caused Higgs's death. Id. ¶ 336.

On July 12, 2018, plaintiff filed a complaint based on the conduct that allegedly caused Higgs's pressure wounds [D.E. 1-1]. In the complaint, plaintiff alleges eight claims: (1) wrongful death based on negligence, (2) wrongful death based on medical malpractice, (3) negligence, (4) medical malpractice, (5) punitive damages, (6) breach of contract, (7) breach of third-party beneficiary contract, and (8) negligent misrepresentation. See id. ¶¶ 337–96.

Defendants are business entities that, at some point, had a relationship with Brian Center Health & Rehabilitation/Windsor where Higgs stayed in July 2015. SSC Windsor operates Brian Center Health & Rehabilitation/Windsor. See Sims Aff. [D.E. 1-4] ¶ 2. Plaintiff also sued the business entities that own SSC Windsor, including North Carolina Holdco II, LLC ("NC Holdco II"),

4

the sole member of SSC Windsor; SSC Equity Holdings MT LLC ("SSC Equity"), the sole member of NC Holdco II; Master Tenant Parent Holdco II, LLC ("Master Tenant"), the sole member of SSC Equity; SavaSeniorCare, LLC ("Sava"), the sole member of Master Tenant; Proto Equity Holdings, LLC ("Proto Equity"), the sole member of Sava; and Terpax, Inc. ("Terpax"), the sole member of Proto Equity. See id. ¶¶ 4–10. Additionally, plaintiff sued other entities that it alleges are related to Sava, including North Carolina Holdco, LLC ("NC Holdco"), SSC Special Holdings, LLC, Special Holdings Parent Holdco, LLC, and SSC Admin. See id. Each limited liability company is formed under Delaware law and has no other members than those listed above. See id. ¶¶ 3–11. Terpax, a corporation, was incorporated in Delaware and has its principal place of business in Tennessee. See id. ¶ 11. Plaintiff also sued SMV Windsor Brian, LLC, ("SMV Windsor"), the entity which leases the nursing home to SSC Windsor. See Wayne Craig Aff. [D.E. 31-3] ¶ 2. Finally, Higgs sued Brian Center and Living Centers Southeast Development Corp. ("Living Centers").[2]

Plaintiff alleges that the defendants were "engaged, directly or indirectly, in partnerships, joint enterprises, and/or joint ventures, to own, operate, and/or manage a for-profit, 82-bed skilled nursing facility, known as 'Brian Center Health & Rehabilitation/Windsor." See Compl. [D.E. 1-1] ¶ 27. Thus, plaintiff argues that all defendants are liable for all claims.

II.

First, the court addresses plaintiff's motion to remand. On August 24, 2018, the defendants jointly removed the action to this court pursuant to 28 U.S.C. § 1441 [D.E. 1–4]. On October 26, 2018, plaintiff moved to remand the action to state court, arguing that the court lacks subject-matter

---

[2] On January 1, 2005, Brian Center and Living Centers divested any interest in the nursing home. See Sims Aff. [D.E. 1-4] ¶¶ 12–14.

jurisdiction based on diversity of citizenship because Brian Center and Living Centers are both citizens of North Carolina [D.E. 49].

"[F]ederal courts, unlike most state courts, are courts of limited jurisdiction, created by Congress with specified jurisdictional requirements and limitations." Strawn v. AT & T Mobility LLC, 530 F.3d 293, 296 (4th Cir. 2008); see Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Removal from state court is proper only if the federal district court has original jurisdiction over the removed action. See 28 U.S.C. § 1441(a); Lontz v.Tharp, 413 F.3d 435, 439 (4th Cir. 2005). Accordingly, a defendant generally may remove an action to federal court only if diversity jurisdiction or federal question jurisdiction exists on the face of the complaint. See 28 U.S.C. § 1441(b).

For a federal district court to have original jurisdiction based on diversity of citizenship, the parties must be completely diverse. See Wis. Dep't of Corr. v. Schacht, 524 U.S. 381, 388 (1998); Carden v. Arkoma Assocs., 494 U.S. 185, 187 (1990); Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 267–68 (1806); Slavchev v. Royal Caribbean Cruises, Ltd., 559 F.3d 251, 254–55 (4th Cir. 2009); Focus Golf Sys., Inc. v. Emery, 24 F. App'x 195, 196 (4th Cir. 2002) (per curiam) (unpublished). A corporation is a citizen of the state in which it is incorporated and of the state in which it maintains its principal place of business. See 28 U.S.C. § 1332(c)(1); Hertz Corp. v. Friend, 559 U.S. 77, 80–81 (2010). Both Brian Center and Living Centers are citizens of North Carolina for purposes of diversity jurisdiction. Higgs was also a North Carolina citizen. Thus, plaintiff argues that the presence of Brian Center and Living Centers destroys complete diversity and renders removal improper.

The doctrine of fraudulent joinder allows a federal district court to "disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over

6

a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir. 1999). "To show fraudulent joinder, the removing party must demonstrate either outright fraud in the plaintiff's pleading of jurisdictional facts or that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." Hartley v. CSX Transp., Inc., 187 F.3d 422, 424 (4th Cir. 1999) (emphasis and quotation omitted); see Weidman v. Exxon Mobil Corp., 776 F.3d 214, 218 (4th Cir. 2015); Turner v. JP Morgan Chase Bank, N.A., 543 F. App'x 300, 301 (4th Cir. 2013) (per curiam) (unpublished); Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993). Defendants argue that there is no possibility that plaintiff would be able to establish a cause of action against the in-state defendants in state court.

To establish that there is no possibility, the defendants must show that there would be no "glimmer of hope" or even a "slight possibility of a right to relief" against the nondiverse defendants in state court. Hartley, 187 F.3d at 426; see Johnson v. Am. Towers, LLC, 781 F.3d 693, 704 (4th Cir. 2015). Under this standard, the court resolves all issues of law and fact in plaintiff's favor. See Hartley, 187 F.3d at 424; Hughes v. Wells Fargo Bank, N.A., 617 F. App'x 261, 264 (4th Cir. 2015) (per curiam) (unpublished); Johnson, 781 F.3d at 704. The "party seeking removal bears the burden to establish federal subject-matter jurisdiction." Hughes, 617 F. App'x at 263. "[T]o determine whether an attempted joinder is fraudulent, the court is not bound by the allegations of the pleadings, but may instead consider the entire record, and determine the basis of joinder by any means available." AIDS Counseling & Testing Ctrs. v. Grp. W. Television, Inc., 903 F.2d 1000, 1004 (4th Cir. 1990) (quotation omitted); see Balt. Cty. v. Cigna Healthcare, 238 F. App'x 914, 920 (4th Cir. 2007) (unpublished); Boss v. Nissan N. Am., Inc., 228 F. App'x 331, 335 (4th Cir. 2007) (per

curiam) (unpublished); Mayes, 198 F.3d at 464.³

As for in-state defendants Brian Center and Living Centers, plaintiff does not have even a slight possibility of a right to relief against the in-state defendants. Brian Center and Living Centers were not involved in the nursing home's operations after January 1, 2005. See Simms Aff. [D.E. 1-4] ¶¶ 13–14; Owen Aff. [D.E. 1-2] ¶¶ 5–6; Owen Aff. [D.E. 1-3] ¶¶ 4–6. Furthermore, Brian Center and Living Centers did not owe Higgs a duty concerning his treatment. Thus, under North Carolina law, plaintiff's negligence and medical malpractice claims against Brian Center or Living Centers cannot succeed. See Huyck Corp. v. C.C. Mangum, Inc., 309 N.C. 788, 793, 309 S.E.2d 183, 187 (1983); Crocker v. Roethling, 217 N.C. App. 160, 162, 719 S.E.2d 83, 86 (2011); Parker v. Town of Erwin, 243 N.C. App. 84, 110, 776 S.E.2d 710, 729–30 (2015). Moreover, plaintiff did not contract with either Brian Center or Living Centers, which precludes plaintiff's breach of contract claim. See McLamb v. T.P. Inc., 173 N.C. App. 586, 588, 619 S.E.2d 577, 580 (2005); Poor v. Hill, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000). Plaintiff also cannot establish a claim under the third-party beneficiary doctrine against either Brian Center or Living Centers. See Hospira Inc. v. Alphagary Corp., 194 N.C. App. 695, 702–03, 671 S.E.2d 7, 13 (2009); United Leasing Corp. v. Miller, 45 N.C. App. 400, 405–06, 263 S.E.2d 313, 317 (1980). Likewise, plaintiff's negligent misrepresentation claim against Brian Center and Living Centers fails. See Raritan River Steel Co. v. Cherry, Bekaert & Holland, 322 N.C. 200, 206, 367 S.E.2d 609, 612 (1988); Brinkman v. Barrett

---

³ Plaintiff argues that this court cannot consider defendants' affidavits concerning the issue of fraudulent joinder because the affidavits do not comply with Rule 56(c)(4) of the Federal Rules of Civil Procedure. See [D.E. 50] 13–17. The court rejects this argument. First, plaintiff misreads Rule 56(c)(4) to include affidavits and materials submitted in support of a notice of removal. Rule 56(c)(4) applies only to motions for summary judgment. See Fed. R. Civ. P. 56. Second, this court can evaluate the entire record in deciding the issue of fraudulent joinder. See AIDS Counseling & Testing Ctrs., 903 F.2d at 1004. Thus, the court rejects plaintiff's arguments concerning defendants' affidavits and other materials.

Kays & Assocs., P.A., 155 N.C. App. 738, 742, 575 S.E.2d 40, 43–44 (2003). Finally, without a viable tort claim, plaintiff's claim for punitive damages fails. See N.C. Gen. Stat. § 1D-15; Funderburk v. JP Morgan Chase Bank, N.A., 241 N.C. App. 415, 425, 775 S.E.2d 1, 8 (2015).

In sum, despite plaintiff's reference to a "joint enterprise" between Brian Center, Living Centers, and the remaining defendants, Compl. [D.E. 1-1] ¶ 27, Brian Center and Living Centers were not involved with or related to the nursing home when Higgs was admitted on July 14, 2015. Accordingly, the court applies the doctrine of fraudulent joinder and disregards the citizenship of Brian Center and Living Centers for jurisdictional purposes, concludes that it has subject-matter jurisdiction over the action, and dismisses both Brian Center and Living Centers. See Mayes, 198 F.3d at 461. Because the remaining parties are completely diverse,[4] the court has subject-matter jurisdiction over the action pursuant to 28 U.S.C. § 1332(a). Thus, the court denies plaintiff's motion to remand [D.E. 49].

III.

Next, the court assesses whether it has personal jurisdiction over those defendants who have moved to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. As stated, on August 27, 2018, thirteen defendants moved to dismiss the complaint for lack of personal jurisdiction.[5]

---

[4] On January 23, 2019, defendants filed a supplemental affidavit that shows that defendant SMV Windsor is diverse from plaintiff. See [D.E. 81-1].

[5] These defendants are Master Tenant [D.E. 14], SSC LP Holdings, Inc. [D.E. 16], Terpax [D.E. 18], SVCARE Holdings, LLC [D.E. 20], SSC Submaster Holdings II LLC [D.E. 22], SSC Submaster Holdings LLC [D.E. 24], SSC Special Holdings, LLC [D.E. 26], SSC Equity [D.E. 27], NC Holdco II [D.E. 32], North Carolina Holdco, LLC ("NC Holdco") [D.E. 34], Special Holdings Parent Holdco, LLC [D.E. 36], Sava [D.E. 38], and Proto Equity [D.E. 40].

9

The moving defendants are all nonresident business entities. The court does not have personal jurisdiction over a nonresident defendant unless jurisdiction comports with North Carolina's long-arm statute and the Fourteenth Amendment's Due Process Clause. See, e.g., Mitrano v. Hawes, 377 F.3d 402, 406 (4th Cir. 2004). North Carolina's long-arm statute extends personal jurisdiction over nonresident defendants consistent with the Fourteenth Amendment's Due Process Clause. See Christian Sci. Bd. of Dirs. v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001). Thus, the statutory inquiry merges with the constitutional inquiry. See id.

Due process requires a defendant to have "certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984) (alteration and quotation omitted). The extent of the contacts needed for jurisdiction turns on whether the claims asserted against a defendant relate to or arise out of the defendant's contacts with the forum state. See ALS Scan, Inc. v. Dig. Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002). If the defendant's contacts with the state are the basis for the suit, specific jurisdiction may exist. Id. In determining specific jurisdiction, the court considers "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." Id. (alteration and quotations omitted). Thus, the "constitutional touchstone" of specific personal jurisdiction "remains whether the defendant purposefully established minimum contacts in the forum state." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985) (quotation omitted). If the defendant's contacts with the forum state are not the basis of suit, general jurisdiction may "arise from the defendant's general, more persistent, but unrelated contacts with the State." ALS Scan, Inc., 293 F.3d at 712. To

10

establish general jurisdiction, the defendant's contacts with the forum state must be both continuous and systematic. The general jurisdiction standard is more demanding than the specific jurisdiction standard. See id.; Helicopteros, 466 U.S. at 414–16.

When the court decides a pretrial motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, a plaintiff need only make a prima facie showing of personal jurisdiction. See Sneha Media & Entm't, LLC v. Associated Broad. Co. P Ltd., 911 F.3d 192, 196–97 (4th Cir. 2018); Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993). In doing so, the court construes all relevant jurisdictional allegations in the light most favorable to the plaintiff and draws the most favorable inferences for the existence of jurisdiction. Mylan Labs., Inc., 2 F.3d at 60. A plaintiff need not establish the existence of personal jurisdiction by a preponderance of the evidence at this stage of the litigation. See Sneha Media, 911 F.3d at 196–97. The court has not held a pretrial evidentiary hearing. Thus, plaintiff need only make a prima facie showing of personal jurisdiction over each nonresident defendant to survive the motions to dismiss.

As for whether the court can constitutionally exercise personal jurisdiction over the nonresident defendants, each is a parent company within the corporate structure of SSC Windsor, which operates the nursing home. Generally, "the contacts of a corporate subsidiary cannot impute jurisdiction to its parent entity." Saudi v. Northrop Grumman Corp., 427 F.3d 271, 276 (4th Cir. 2005); cf. Cannon Mfg. Co. v. Cudahy Packing Co., 267 U.S. 333, 334–38 (1925); Dickson Marine Inc. v. Panalpina, Inc., 179 F.3d 331, 338–39 (5th Cir. 1999). If, however, a parent exercises substantial control over a subsidiary, then a court can impute the subsidiary's contacts with a forum state to the parent. See Mylan Labs., Inc., 2 F.3d at 60–61; PCS Phosphate Co. v. Norfolk S. Corp., 520 F. Supp. 2d 705, 712–13 (E.D.N.C. 2007), aff'd, 559 F.3d 212 (4th Cir. 2009).

Even construing all relevant jurisdictional allegations in the light most favorable to plaintiff, plaintiff has failed to make a prima facie showing that the nonresident defendants substantially controlled SSC Windsor. To support their motions to dismiss for lack of personal jurisdiction, each moving defendant filed a substantially similar memorandum and affidavit, which assert that the relevant nonresident defendant has never "owned, operated, managed, or maintained the nursing home known as Brian Center Health & Rehabilitation/Windsor." Sims Aff. [D.E. 15-1] ¶ 12; Sims Aff. [D.E. 17-1] ¶ 12; Sims Aff. [D.E. 19-1] ¶ 5; Sims Aff. [D.E. 21-1] ¶ 12; Sims Aff. [D.E. 23-1] ¶ 12; Sims Aff. [D.E. 25-1] ¶ 12; Sims Aff. [D.E. 28-1] ¶ 12; Sims Aff. [D.E. 29-1] ¶ 12; Sims Aff. [D.E. 33-1] ¶ 12; Sims Aff. [D.E. 35-1] ¶ 12; Sims Aff. [D.E. 37-1] ¶ 12; Sims Aff. [D.E. 39-1] ¶ 12; Sims Aff. [D.E. 41-1] ¶ 12. Although the record reveals that the nonresident entities are holding companies that own SSC Windsor, which operates Brian Center Health & Rehabilitation/Windsor, plaintiff has not offered any evidence that the nonresident entities exert substantial control over SSC Windsor beyond the conclusory statement that all the defendants, some of which do not exist,[6] exercise such control. Thus, the court does not impute the contacts of SSC Windsor to the moving defendants. See, e.g., Dickson Marine Inc., 179 F.3d at 339.

Without imputing SSC Windsor's contacts with North Carolina to the moving defendants, plaintiff fails to show that these companies independently purposefully availed themselves of the privilege of doing business in North Carolina. See Sneha Media, 911 F.3d at 200–01; Perdue Foods LLC v. BRF S.A., 814 F.3d 185, 189 (4th Cir. 2016). The nonresident holding companies do not do business in North Carolina, own property in North Carolina, maintain offices in North Carolina,

---

[6] On October 11, 2013, SVCARE Holdings LLC merged into Sava, SSC Submaster Holdings II LLC merged into SSC Equity, and SSC Submaster Holdings LLC merged into SSC Equity. See Simms Aff. [D.E. 21-1] ¶ 2; Simms Aff. [D.E. 23-1] ¶ 2; Simms Aff. [D.E. 25-1] ¶ 2.

or even have isolated contacts with North Carolina. See Sims Aff. [D.E. 15-1] ¶¶ 4–11; Sims Aff. [D.E. 17-1] ¶¶ 3–11; Sims Aff. [D.E. 19-1] ¶¶ 2–4; Sims Aff. [D.E. 21-1] ¶¶ 3–11; Sims Aff. [D.E. 23-1] ¶¶ 3–11; Sims Aff. [D.E. 25-1] ¶¶ 3–11; Sims Aff. [D.E. 28-1] ¶¶ 3–11; Sims Aff. [D.E. 29-1] ¶¶ 3–11; Sims Aff. [D.E. 33-1] ¶¶ 3–11; Sims Aff. [D.E. 35-1] ¶¶ 3–11; Sims Aff. [D.E. 37-1] ¶¶ 3–11; Sims Aff. [D.E. 39-1] ¶¶ 3–11; Sims Aff. [D.E. 41-1] ¶¶ 3–11. Indeed, many of the moving defendants have never engaged in business in North Carolina. See Sims Aff. [D.E. 21-1] ¶ 8; Simms Aff. [D.E. 28-1] ¶ 8; Simms Aff. [D.E. 29-1] ¶ 8; Simms Aff. [D.E. 33-1] ¶ 8; Simms Aff. [D.E. 35-1] ¶ 8; Simms Aff. [D.E. 37-1] ¶ 8; Simms Aff. [D.E. 39-1] ¶ 8; Simms Aff. [D.E. 41-1] ¶ 8. Plaintiff also cannot show that general personal jurisdiction exists over any moving defendant because the defendants did not have continuous and systematic contacts with North Carolina. See ALS Scan, Inc., 293 F.3d at 712. Finally, personal jurisdiction pursuant to Rule 4(k)(2) of the Federal Rules of Civil Procedure does not exist because plaintiff has not shown that no other state could exercise jurisdiction over the nonresident defendants, and alternatively, none of the claims arise under federal law. See Fed. R. Civ. P. 4(k)(2); Sneha Media, 911 F.3d at 201. Accordingly, the court grants the motions to dismiss pursuant to Rule 12(b)(2), and dismisses the following defendants: Master Tenant, SSC LP Holdings, Inc., Terpax, SVCARE Holdings LLC, SSC Submaster Holdings II LLC, SSC Submaster Holdings LLC, SSC Special Holdings LLC, SSC Equity, NC Holdco II, NC Holdco, Special Holdings Parent Holdco, LLC, Sava, and Proto Equity.

IV.

On August 27, 2018, Brian Center and Living Centers moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure [D.E. 30]. On August 28, 2018, SMV Windsor moved to dismiss pursuant to Rule 12(b)(6), or alternatively, moved for summary judgment [D.E. 42].

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 135 S. Ct. 2218 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's allegations must "nudge[ ] [his] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

As for Brian Center's and Living Centers's motion to dismiss, Brian Center and Living Centers argue that both are "completely separate companies, and cannot possibly be held liable for any act or omission that occurred" at the nursing home in 2015. [D.E. 31] 3. As mentioned, on January 1, 2005, Brian Center "divested all interest in the nursing home" to SSC Windsor, and Living Centers "ceased to have any connection with or relationship to the nursing home." Owen Aff. [D.E. 31-1] ¶ 3; Owen Aff. [D.E. 31-2] ¶ 3. Furthermore, neither is connected to the entities that own SSC Windsor. See [D.E. 31] 3. In any event, even looking only at the complaint, plaintiff does not state a claim against either defendant that crosses the line of mere possibility, much less

14

plausibility. Thus, the court grants Brian Center's and Living Centers's motion to dismiss [D.E. 30].

As for SMV Windsor, SMV Windsor owns the real property on which the nursing home is located and leases that property to SSC Windsor. See Craig Aff. [D.E. 42-2] ¶ 2. SMV Windsor argues that plaintiff's complaint fails to plausibly state claims that would support recovery against the lessor of a building under North Carolina law. See [D.E. 42] 2. Plaintiff responds that North Carolina law imposes liability on the owner of real property when that owner engages in a "joint venture, joint enterprise, or partnership" with a tortfeasor. See [D.E. 51] 19. Plaintiff's complaint merely advances the legal conclusion that SMV Windsor and SSC Windsor operated a joint venture, joint enterprise, or partnership under North Carolina law. The court need not accept this conclusion as true. See Iqbal, 556 U.S. at 678–79; Giarratano, 521 F.3d at 302. Plaintiff's complaint does not plausibly allege that SSC Windsor and SMV Windsor operated as a joint venture, joint enterprise, or partnership under North Carolina law. Cf. Lake Colony Constr., Inc. v. Boyd, 212 N.C. App. 300, 306, 711 S.E.2d 742, 746–47 (2011). Accordingly, plaintiff fails to plausibly state claims against SMV Windsor. Thus, the court grants SMV Windsor's motion to dismiss.

V.

On August 31, 2018, SSC Windsor and SSC Admin answered plaintiff's amended complaint [D.E. 45, 46]. On November 12, 2018, plaintiff moved to strike both answers pursuant to Rule 12(f) of the Federal Rules of Civil Procedure [D.E. 55]. In plaintiff's motion to strike, plaintiff argues that SSC Windsor and SSC Admin violated Rule 8(b) of the Federal Rules of Civil Procedure by objecting to the complaint and by failing to respond to the substance of the complaint's allegations. See [D.E. 56] 3–10.

Rule 12(f) allows the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," either sua sponte or on motion by a party

15

to the action. Fed. R. Civ. P. 12(f). A motion to strike a pleading seeks a "drastic remedy" and is usually "a dilatory tactic." Waste Mgmt. Holdings, Inc. v Gilmore, 252 F.3d 316, 347 (4th Cir. 2001) (quotation omitted); see United States v. Ancient Coin Collectors Guild, 899 F.3d 295, 324–25 (4th Cir. 2018); Staton v. N. State Acceptance, LLC, No. 1:13-CV-277, 2013 WL 3910153, at *2 (M.D.N.C. July 29, 2013) (unpublished). Rule 8(b) requires a party responding to a pleading to "state in short and plain terms its defenses to each claim asserted against it" and to "admit or deny" the allegations of the complaint. Fed. R. Civ. P. 8(b)(1). Each "denial must fairly respond to the substance of the allegation." Fed. R. Civ. P. 8(b)(2).

The answers deny many of the allegations of the complaint and include an alternative general denial of the allegation at the end of each paragraph to ensure that the effect of the answer would be a denial. See, e.g., [D.E. 45] ¶¶ 301–98; [D.E. 46] ¶¶ 301–98. Thus, SSC Windsor and SSC Admin have, for the most part, simply denied the complaint's allegations. Despite plaintiff's argument to the contrary, denials in an answer do not prejudice a plaintiff. Rather, such denials simply require a plaintiff to conduct discovery and attempt to prove his claims. SSC Windsor and SSC Admin did not violate Rule 8(b). See, e.g., Farrell v. Pike, 342 F. Supp. 2d 433, 441–42 (M.D.N.C. 2004). Thus, the court denies plaintiff's motion to strike.

## VI.

In sum, the court DENIES plaintiff's motion to remand [D.E. 49] and plaintiff's motion to strike [D.E. 55]. The court GRANTS the motions to dismiss for lack of personal jurisdiction [D.E. 14, 16, 18, 20, 22, 24, 26, 27, 32, 34, 36, 38, 40]. The court DISMISSES defendants Master Tenant, SSC LP Holdings, Inc., Terpax, SVCARE Holdings LLC, SSC Submaster Holdings II LLC, SSC Submaster Holdings LLC, SSC Special Holdings LLC, SSC Equity, NC Holdco II, NC Holdco, Special Holdings Parent Holdco, LLC, Sava, and Proto Equity. The court GRANTS the motions to

16

dismiss for failure to state a claim upon which relief can be granted [D.E. 30, 42], and the court DISMISSES the complaint without prejudice against defendants Brian Center, Living Centers, and SMV Windsor. The court DENIES AS MOOT the motions for extension of time [D.E. 53, 79], motion to dismiss [D.E. 72], and motions to strike [D.E. 67, 70]. Plaintiff may continue to pursue his claims against defendants SSC Windsor and SSC Admin.

SO ORDERED. This 7 day of February 2019.

*/s/ James C. Dever*
JAMES C. DEVER III
United States District Judge